IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CANDIDA ROSE DAW,
        Plaintiff,

vs.                                  Case No.:  3:11cv96/RV/EMT

LOUANNE COWAN, ALISA FINCH,
and REBECCA WILLIAMS,
        Defendants.
_____/

## ORDER, REPORT AND RECOMMENDATION

Background

Plaintiff Candida Rose Daw ("Daw" or "Plaintiff"), a non-prisoner proceeding pro se, commenced this action on February 22, 2011, by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 (doc. 1).[1]  Plaintiff subsequently requested, and was granted, leave to proceed in forma pauperis ("IFP") (docs. 7, 8).  The court then reviewed the allegations Daw's complaint, pursuant to 28 U.S.C. § 1915(e), to determine whether this action was subject to dismissal.  *See* 28 U.S.C. § 1915(e)(2)(B) ( providing that, for parties proceeding IFP, "the court shall dismiss the case at any time if the court determines that the action or appeal is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief").  The court's review revealed that the allegations in Daw's complaint failed to state a claim on which relief could be granted.  Rather than recommend dismissal pursuant to § 1915(e)(2)(B)(ii), however, the court gave Plaintiff an opportunity to file an amended complaint (*see* doc. 10).  In the order directing amendment, Plaintiff was advised that—pursuant to the Rooker-

---

[1] Plaintiff initiated this action with two Co-Plaintiffs, but the other Plaintiffs have been voluntarily dismissed from this action (*see* docs. 24, 25), and Daw now proceeds as the lone Plaintiff (*see, e.g.*, doc. 34).

Feldman doctrine[2]—it appeared that this court lacked jurisdiction over her claims and, that to the extent she sought appellate review by this court of a final state court judgment, this court could not grant such relief (*see* doc. 10 at 5).[3]

On May 11, 2011, Daw filed an Amended Complaint (doc. 12).  After review of this complaint, the court remained concerned that it lacked jurisdiction over Plaintiff's claims, but the facts relevant to the Rooker-Feldman analysis were still unclear.  The court thus concluded that Plaintiff should have another opportunity to clarify her allegations, and it issued an order directing her to file a second amended complaint.  In the order directing amendment, Plaintiff was again advised: "To the extent Plaintiff[] seek[s] some sort of 'appellate review' of state court proceedings [regarding the custody of her children], no cause of action will lie, as federal courts do not have jurisdiction to review final state court administrative or judicial judgments under the Rooker-Feldman doctrine." (doc. 17 at 5).  Importantly, Daw was specifically instructed to clarify the status of the state court custody proceedings (*see id.*).  She was also advised that if she failed to comply with the terms of the order directing amendment, this action could be dismissed (*see id.* at 6).  Thereafter, on October 19, 2011, Plaintiff filed a Second Amended Complaint (doc. 20).  In this complaint Plaintiff stated that her "case [was] still ongoing in Santa Rosa County in Milton, FL," and she noted that her "last Termination of Parental Rights Trial (TPR) [was] on August 29, 2011, [and that] it was dismissed by . . . Judge Gary Bergosh for lack of evidence" (*id.* at 4).  In the concluding section of the complaint, Daw then stated, "I Plaintiff Candida Rose Daw (Welch) as my State Court proceedings are still ongoing. [sic]  I would also asked [sic] the U.S. District Court to please allow me an appealant [sic] review of State Court Proceedings." (*id.* at 7).  As relief, in pertinent part, Plaintiff sought the return of her children to her "care and custody," as well as "regular and longer visitations with [her] four children until [she gets] them back into [her] custody" (*id.* at 8).  Upon review of the Second Amended

---

[2] Rooker v. Fid. Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1986). *See also* Carter v. Killingsworth, No. 12-15411, 2013 WL 4766871, at *2 (11th Cir. Sept. 6, 2013) (unpublished) ("The Rooker–Feldman doctrine bars federal district courts from reviewing state court decisions" and "applies when the losing party in state court files suit in federal court after the state proceedings end, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.") (internal citations, quotations, and alterations omitted).

[3] The page numbers used in this Report reflect the page numbers assigned by the court's electronic docketing system.

Complaint, and in light of Daw's assertion that custody proceedings were ongoing, the court concluded that it likely must abstain from intervening in the ongoing state custody proceedings. *See, e.g.*, Younger v. Harris, 401 U.S. 37 (1971). As previously noted, however, in the Second Amended Complaint Plaintiff also specifically requested that this court sit in an appellate capacity with regard to the state court's custody decisions, even though Daw had previously been advised that this court does not have jurisdiction to do so. Mindful of Plaintiff's pro se status, as well as the court's lack of prior instruction with regard to the Younger abstention doctrine, the court gave Plaintiff yet another opportunity to amend her allegations.[4] In the order directing amendment, in pertinent part, Plaintiff was advised of the Younger abstention doctrine, and she was again reminded of the Rooker-Feldman jurisdictional issue (*see* doc. 26 at 3–4 & n.4). Plaintiff was also advised: "While the court is aware of no viable claim, in an abundance of caution the court will give Plaintiff an opportunity to file a third amended complaint instead of recommending dismissal of this action at this juncture." (doc. 26 at 6) (emphasis added). Now before the court is Plaintiff's Third Amended Complaint, filed September 21, 2012, which is the operative pleading (doc. 34).[5]

As noted *supra*, because Daw is proceeding IFP, the court may dismiss this case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The language in this subsection "tracks the language of Federal Rule of Civil Procedure 12(b)(6)," and thus dismissals for failure to state a claim are governed by the same standard as Rule 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe County Bd. of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). To survive § 1915(e)(2)(B)(ii), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949

---

[4] *See, e.g.*, Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.").

[5] The Third Amended Complaint was filed under seal at the court's direction because it includes the full names of Daw's minor children, instead of only the initials of those children as required (*see* doc. 36, citing Fed. R. Civ. P. 5.2(a)). Upon review of the record in this case, the court notes that Plaintiff included the full names of her minor children in the Amended Complaint and Second Amended Complaint (docs. 12, 20) as well. Thus, the court will now order that those complaints also be sealed.

(2009) (quotation marks omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). Finally, in civil rights cases, "[m]ore than mere conclusory notice pleading is required . . . . A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation marks and alteration omitted). Upon review of the Third Amended Complaint, the court concludes that facts set forth by Plaintiff fail to state a claim for relief that is plausible on its face. Dismissal of this action is therefore warranted.

<u>Allegations of the Third Amended Complaint</u>

Plaintiff names three Defendants in the operative complaint: Louanne Cowan ("Cowan"), a child protective investigator with the Florida Department of Children and Family Services ("DCF"); Alisa Finch ("Finch"), a family service counselor with FamiliesFirst Network ("FFN")[6]; and Rebecca Williams ("Williams"), a family service counselor with FFN (doc. 34 at 1–2).

Daw alleges she is a resident of Flomaton, Alabama, and has been since June 2008 (doc. 34 at 1). She contends that some time prior to August 20, 2008, Defendant Cowan presented false allegations and "false testimonies" to Ron Swanson, a Circuit Court Judge in and for the First Judicial Circuit of Florida, which allegations resulted in the "illegal" removal of Daw's four minor children from her residence in Flomaton, Alabama, on August 20, 2008 (*id.* at 3–5). Plaintiff contends that

---

[6] Daw identifies the agency as "Family First Network" (*see* doc. 34 at 1), but the correct name of the agency is FamiliesFirst Network. According to its website, FFN provides an array of foster care services for children and families, including providing child protective services, and does so under contract from the DCF. *See* http://www.elakeviewcenter.org/FamiliesFirstNetwork/AboutUs.aspx (last visited September 26, 2013).

In order to make out a claim under § 1983, Plaintiff must allege that a state actor deprived her of a federal right. Griffin v. City of Opa–Locka, 261 F.3d 1295, 1303 (11th Cir. 2001). Here, for the purposes of Plaintiff's § 1983 claims, the court shall assume that Defendants Finch and Williams, as employees of FFN, are state actors. *See* Smith v. Beasley, 775 F. Supp. 2d 1344, 1354 (M.D. Fla. 2011) (finding that community-based agencies and their employees, who contract with the State to provide placement and other services for foster children, are state actors for purposes of potential liability under § 1983); *see also* Taylor By & Through Walker v. Ledbetter, 818 F.2d 791, 796 (11th Cir. 1987) ("[S]tate officials responsible for foster placement may be liable under section 1983.").

Defendant Finch, with the assistance of the Flomaton Police Department, "illegally, inforceably [sic], and without just cause" entered her home in Flomaton, removed her four children "from [her] custody," and took the children to Florida (*id.* at 3).[7]

Daw contends that after her children were removed, and as a result of their removal, she became very stressed, depressed and anxious, and her health began to rapidly fail (doc. 34 at 3–4). She claims she developed a stress-related tumor, which had to be removed in July 2012, and that her pancreas and spleen were also removed, "all of which can be traced back to the time [her] four children were removed from [her] custody" (*id.* at 4).  She also contends she did not have "fair representation" by counsel in the state court custody proceedings; she did not have an opportunity to present her "side of the story" to the state court, which "would have clearly shown that all of this was a big mistake"; and that all of the state court's rulings related to this matter have been erroneous (*id.* at 4).  Daw claims that Defendants' actions caused her four children to "be away from [her] for 4 years" (*id.*), and she suggests that Defendant's actions have resulted in the permanent termination of her parental rights (*id.* at 5).  Elsewhere in the complaint, however, Daw states that the state court proceedings are "still ongoing" and that another TPR trial is scheduled for a future date (*id.* at 4). Lastly, Daw alleges that in or about May 2010, Defendants Finch and Williams contacted Dr. David C. Smith, Daw's family physician, and convinced him to stop prescribing all of her medications, which "also put [her] life in further danger and . . . worsen[ed] [her] health conditions" (*id.* at 5).

Plaintiff raises a variety of claims on which she seeks relief, including a violation of the Fourth Amendment, based upon the allegedly wrongful entry into her home on August 20, 2008; a violation of her right to due process under the Fourteenth Amendment, presumably based on the presentation of false allegations to Judge Swanson, her inadequate representation in the state court proceedings, and the conduct and result of the state court proceedings; a general violation of her civil rights; a violation of the "the State of Florida Privacy Act," based upon Finch and Williams' contact with Dr. Smith; a general violation of Florida law, based upon "going beyond jurisdiction" (that is, presumably, by removing the children from a residence in Alabama, based upon an order issued by a Florida judge, and transporting the children to Florida); and "discrimination against the handicapped" (doc. 34 at

---

[7] Although Plaintiff did not bring this action on behalf of her minor children, she asserts that their "civil rights have been violated extremely," along with hers (doc. 34 at 4).

4–5, 7–8).  As relief, Plaintiff asks that her four children be returned to her and reunited with her as soon as possible, and she seeks monetary damages (*id.* at 7–8).

Discussion

Initially, although Plaintiff was provided numerous opportunities to clarify the status of the child custody proceedings, she has failed to do so.  On one hand, she appears to claim she has forever lost her parental rights, and she seeks restoration of those rights.  On the other hand, she states that the child custody proceedings have not concluded, and she apparently seeks modification or nullification of the state court orders that have issued thus far in those proceedings.  While the court is required to construe Plaintiff's pro se pleadings liberally, it is not required to rewrite her deficient pleadings. *See* GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998).  Moreover, even a pro se litigant such as Plaintiff must conform to procedural rules.  *See* Loren v. Sasser, 309 F. 3d 1296, 1304 (11th Cir. 2002).  And, a district court may sua sponte dismiss an action for the plaintiff's failure to comply with the rules or any order of the court.  *See* Fed. R. Civ. P. 41(b).  Here, Plaintiff has failed to comply with the court's orders regarding the requirements for filing an amended complaint, and she has done so despite having been warned that the consequence of such action could be the dismissal of this case (*see* doc. 10 at 7; doc. 17 at 6; doc. 26 at 7).  Moreover, it seems that this failure has been willful, as Plaintiff appears to "want it both ways"—that is, she wishes to avoid dismissal of this action—pursuant to the Younger abstention doctrine or the Rooker-Feldman doctrine—and thus appears to have deliberately failed to clarify the status of the state court proceedings.[8]  Under these circumstances, the court likely could recommend dismissal of this action pursuant to Rule 41(b).  *See, e.g.*, Tanner v. Neal, 232 F. App'x 924 (11th Cir. 2007) (affirming sua sponte dismissal without prejudice of inmate's § 1983 action for failure to file an amended complaint in compliance with court's prior order directing amendment, noting that inmate was provided with "a standard form [as Daw was here (*see, e.g.*, doc. 10 at 7; doc. 26 at 7)], a clear description of what her complaint should contain, and page and exhibit limitations," but the overall form and content of her amended complaint showed that she did not comply with the district court's order after being

---

[8] Oftentimes the court may take judicial notice of the status of state court proceedings by examining online dockets.  Here, however, the online docket of the child custody proceedings is not available, presumably because of the nature of those proceedings.

warned of the consequences).[9]  In this instance, however, the court declines to recommend dismissal pursuant to Rule 41 for two reasons.  First, a dismissal under Rule 41(b) should be without prejudice, but some of Plaintiff's claims will be time barred if she is required to initiate a new action, and thus a dismissal without prejudice would in effect be a dismissal with prejudice as to those claims. Second, although it remains unclear whether the child custody proceedings were ongoing at the time Plaintiff initiated this action and continued during the course of the action, as Daw alleges in the operative complaint, or whether they have concluded, as Daw suggests in the same complaint by indicating that her parental rights have been forever terminated, Plaintiff has failed to state a plausible claim for relief under either scenario.  Accordingly, after carefully considering all of Plaintiff's claims and determining that she has failed to state a viable claim for relief as to any of them, including those that center around the issue of the status of the state court custody proceedings, the undersigned recommends dismissal of this action on the merits.  *See, e.g.*, Lobo v. Celebrity Cruises, Inc., 704 F.3d 882, 893 (11th Cir. 2013) (dismissal under Rule 12(b)(6) with prejudice is an adjudication on the merits) (citations omitted).

(1)     Younger Abstention Doctrine

A review of all of Daw's submissions in this case reveals that the child custody proceedings were likely ongoing at the time she initiated this action on February 22, 2011, and that they continued during the pendency of this action.  For example, as noted *supra*, Daw included allegations in the Second Amended Complaint, filed October 19, 2011, that her "last" TPR trial was on August 29, 2011 (doc. 20 at 4).  And in the operative complaint, filed September 21, 2012, she states that a future TPR trial is scheduled (doc. 34 at 4).

To the extent the state court proceedings were indeed pending at the time Daw filed the instant lawsuit, her cause of action is clearly subject to dismissal pursuant to the Younger abstention doctrine. This doctrine, announced in Younger v. Harris, 401 U.S. 37 (1971), reaffirmed the "strong federal

---

[9] Plaintiff has not requested leave to file a fourth amended complaint pursuant to Fed. R. Civ. P. 15(a).  The court notes, however, that under this Rule reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, *repeated failure to cure deficiencies by amendments previously allowed*, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility" are proper bases to deny a plaintiff's motion to amend. *See* Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) (emphasis added).

policy against federal-court interference with pending state judicial proceedings." <u>Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 431 (1982). "The policies underlying <u>Younger</u> are fully applicable to noncriminal judicial proceedings when important state interests are involved." <u>Id.</u> at 432. In determining whether it must abstain from exercising jurisdiction under <u>Younger</u>, a court must consider three factors: (1) whether there is an ongoing state judicial proceeding; (2) whether the proceeding implicates important state interests; and (3) whether there is an adequate opportunity to raise constitutional challenges in the state proceeding. *Id.*

In this case, all three of the <u>Younger</u> factors require the court to abstain from exercising jurisdiction over Daw's claims. The court will assume, for purposes of this portion of the discussion, that there was a pending state court action at the time Plaintiff filed suit in this court, which satisfies the first factor. *See* <u>Liedel v. Juvenile Court of Madison Cnty.</u>, 891 F.2d 1542, 1546 n.6 (11th Cir. 1990) ("The date of filing of the federal complaint is the relevant date for purposes of determining <u>Younger</u>'s applicability."). As for the second factor, child custody cases implicate important state interests. *See* <u>Moore v. Sims</u>, 442 U.S. 415, 435 (1979) (noting that "family relations are a traditional area of state concern" and determining that state processes sufficiently accommodate questions arising from child welfare litigation); <u>31 Foster Children v. Bush</u>, 329 F.3d 1255, 1275 (11th Cir. 2003) ("The parties also agree, and so do we, that important state interests are involved [in the ongoing state court dependency proceedings].");  <u>Liedel</u>, 891 F.2d at 1546 (federal district courts should normally refrain from interfering with ongoing child custody proceedings). Finally, the third factor is met because—as discussed more fully *infra*—Plaintiff had the opportunity to raise any constitutional issues in the state court proceedings. Whether she chose to do so is unclear and irrelevant to the <u>Younger</u> analysis. *See also, e.g.*, <u>31 Foster Children</u>, 329 F.3d at 1279, 1281 (pointing out that burden is on plaintiffs to establish that state proceedings do not provide an adequate remedy for their claims; finding that plaintiffs failed to do so; and noting (1) that each plaintiff was represented by counsel, (2) there were no procedural constraints that prevented them from presenting their claims to the state courts in their dependency review hearings, and (3) that plaintiffs provided no unambiguous authority establishing that the procedures available in the state court dependency proceedings did not provide an adequate opportunity for them to raise their constitutional claims) (citations omitted). Thus, to the

extent the state court action was pending at the time Plaintiff filed suit in this court, this court must abstain from exercising jurisdiction under the <u>Younger</u> abstention doctrine.

        (2)       <u>Rooker-Feldman</u> Doctrine

        Alternatively, to the extent Daw seeks review of any final judgments issued by the state court, including those that terminated her parental rights, this court lacks jurisdiction over the matter. The <u>Rooker-Feldman</u> doctrine places limits on the subject matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation. *See* <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 415–16, 44 S. Ct. 149, 150, 68 L. Ed. 362 (1923); <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 476–82, 103 S. Ct. 1303, 1311–15, 75 L. Ed. 2d 206 (1983). The Eleventh Circuit has described the <u>Rooker-Feldman</u> doctrine as follows:

> The <u>Rooker-Feldman</u> doctrine provides that federal courts, other than the United States Supreme Court, have no authority to review the final judgments of state courts. The doctrine extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are "inextricably intertwined" with a state court judgment. A federal claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.

<u>Siegel v. LePore</u>, 234 F.3d 1163, 1172 (11th Cir. 2000) (en banc) (citations and quotations omitted). The Eleventh Circuit has developed the following four criteria which must be satisfied for the <u>Rooker-Feldman</u> doctrine to bar federal court jurisdiction: "(1) the party in federal court is the same as the party in state court; (2) the prior state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment." <u>Amos v. Glynn County Bd. of Tax Assessors</u>, 347 F.3d 1249, 1265 n.11 (11th Cir. 2003) (internal citations omitted).

        Notwithstanding the fact that Daw frames much of Defendants' conduct in terms of alleged constitutional deprivations by attacking the veracity of evidence presented to Judge Swanson, the circumstances surrounding the removal of her children in August 2008, and the manner in which the state court proceedings were conducted, at bottom Daw essentially challenges the basis of the state court's decision to remove her children from her custody. The first two prongs of the <u>Rooker-Feldman</u> standard are satisfied because Daw was a party to the state court proceedings, and for the purposes

of this discussion the court will assume there was a final or conclusive judgment on the merits concerning the custody of Daw's children. As to the third prong, the undersigned concludes that Daw had a reasonable opportunity to present her constitutional claims during the state dependency court proceedings. Florida law permits constitutional challenges to orders of a dependency court to be brought in the dependency court, and those challenges are subject to review by the Florida District Courts of Appeals. *See, e.g.*, A.B. v. Florida Dep't of Children and Family Serv., 901 So. 2d 324 (Fla. 3d DCA 2005) (review of order of dependency court on claim that admission of testimony violated constitutional right to confrontation and cross-examination of accuser); J.H. v. Dep't of Children and Families, 890 So. 2d 476 (Fla. 5th DCA 2004) (appeal from order of dependency court on claim that trial court's treatment of arraignment hearing as disposition hearing violated procedural due process rights); In re J.P., 875 So. 2d 715 (Fla. 2d DCA 2004) (review of order of dependency court on claim that removing children from custody of father and placing them in shelter violated due process as father was not given opportunity to present evidence and be heard); M.L.W. v. Dep't of Health and Rehabilitative Serv., 695 So. 2d 724 (Fla. 1st DCA 1996) (due process requires fundamental fairness in juvenile dependency proceedings). Although Daw contends she had ineffective counsel in the state court proceedings, the undersigned nevertheless concludes she had a reasonable opportunity to present her constitutional claims to the state court, including her claims that Defendant Cowan presented false allegations to Judge Swanson, that her home was illegally searched, that the Florida court had no authority to order the removal of children who were located in an Alabama residence, as well as her claim of discrimination based on her "handicapped" status and the alleged due process violations in the dependency proceedings. Daw was a party to the proceedings and was represented by counsel, she was not required to accept her attorney's advice, Florida law permitted her to raise constitutional issues, and the facts as presented by Daw do not suggest that she was in any way denied a reasonable opportunity to be heard. Therefore, the third prong of the Rooker-Feldman doctrine is satisfied. This court must next determine whether Daw's federal claims are "inextricably intertwined" with the state court judgment in the sense that "'the federal claim[s] succeed[ ] only to the extent that the state court wrongly decided the issues before it.'" Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1332 (11th Cir. 2001) (quoting Siegel, 234 F.3d at 1172). On several occasions the Eleventh Circuit has considered and applied the Rooker-Feldman doctrine in

cases involving claims related to state child custody proceedings. *See, e.g.*, Liedel, 891 F.2d at 1542; Staley v. Ledbetter, 837 F.2d 1016 (11th Cir. 1988); Goodman, 259 F.3d at 1327. In Liedel, a child's mother and the mother's husband who were displeased with a state court's child custody action brought a § 1983 action seeking "a temporary restraining order and a permanent injunction against the Department [of Human Resources] and Juvenile Court, preventing them from enforcing the Juvenile Court's prior orders and preventing them from issuing further orders against the [plaintiffs]." Liedel, 891 F.2d at 1544. The complaint alleged that the child custody action violated Mr. Liedel's constitutional rights because he was not a party to the action, was never served, was not subject to the Juvenile Court's jurisdiction, and was not financially responsible for the child. *Id.* at 1544. The complaint also alleged that the Juvenile Court deprived Ms. Liedel of her right to counsel by denying her appointed counsel in the child custody proceedings and by permitting Mr. Liedel to assist her in her presentation at the custody hearing. *Id.* at 1544–45. The Eleventh Circuit reasoned that the requested relief "would effectively nullify those state orders," and therefore held that "[t]o the extent that the [plaintiffs'] federal court complaint seeks to challenge the final state court judgment, it must be dismissed for lack of jurisdiction under the Rooker-Feldman doctrine." *Id.* at 1545–46. Similarly, in Staley, a former adoptive mother filed a civil rights action against the Georgia Commissioner of Human Resources seeking to challenge child custody determinations and termination of her parental rights on grounds of equal protection and due process violations. Staley, 837 F.2d at 1017. The plaintiff requested reinstatement of parental custody and psychiatric care at state expense for her children and herself. *Id.* The Eleventh Circuit determined that the plaintiff "in essence sought to reverse a state court's child custody determination" and held that "[N]o federal subject matter jurisdiction existed in this case. In effect, Staley seeks to challenge collaterally the state agency and court proceedings that terminated her parental rights. The federal courts are not a forum for appealing state court decisions." *Id.* at 1017–18. And in Goodman, a mother brought, on her own behalf and on behalf of her son, a § 1983 action against employees of the Georgia Department of Family and Children Services, seeking <u>only</u> damages for alleged violations of their constitutional rights in connection with the investigation and initiation of a state juvenile proceeding to remove the son from his mother's custody. 259 F.3d at 1328. The Goodmans raised the following constitutional claims: (1) protective services employees and a law enforcement officer violated their Fourth Amendment

rights by unlawfully entering and searching their home without a warrant or consent; (2) a protective services employee submitted an inaccurate and untruthful affidavit to the juvenile court in support of an ex parte petition for custody of the child in violation of the Due Process Clause of the Fourteenth Amendment; and (3) the protective services employees committed an additional due process violation by threatening a family friend with arrest if he did not return the child to protective services.  The <u>Goodman</u> court noted that <u>Liedel</u> and <u>Staley</u> were "easy case [s]" for application of the <u>Rooker-Feldman</u> doctrine because they involved "far more direct attacks on the previous state court judgment" than the Goodmans' claims; in fact, part of the relief sought in <u>Liedel</u> and <u>Staley</u> was an injunction preventing enforcement of the state court judgment and returning custody to the aggrieved parent (the plaintiffs in both cases also sought relief in the form of damages), whereas the Goodmans did not seek injunctive relief that would prevent the enforcement of any child custody orders; they sought only damages for the constitutional violations they allegedly suffered. <u>Goodman</u>, 259 F.3d at 1333.  The Eleventh Circuit concluded that the Goodmans' claim involving the search of the home was not "'inextricably intertwined with the state court custody proceeding in the sense that it [was] premised on the state court having ruled erroneously," because no evidence or other information derived from the search was introduced in the state court proceedings or was relied upon by the court when it made its custody determination. *Id.* at 1334.  Stated another way, the court concluded, "th[e] federal claim [regarding the search could] succeed without in any way calling into doubt the state court decision," and thus it was not barred by <u>Rooker-Feldman</u>. *Id.*  The Goodmans' second claim, that the protective services worker's affidavit was false and the state court's ex parte proceeding violated the plaintiffs' due process rights, was barred because the state court decided to take custody of the child away from the mother only after finding the worker's affidavit to be credible and finding that the ex parte order was justified. *Id.*  Likewise, the third claim, that the protective services worker violated the child's due process rights when she threatened a family friend with arrest if he did not return the child to the state's custody, was inextricably intertwined with the state court orders and judgment, because the factual and legal predicate for it was the basis of a motion the plaintiffs filed to have the child returned to the friend's custody, and the state court held a hearing on that motion and denied it. *Id.*  Importantly, the Eleventh Circuit additionally determined that the Goodmans had a reasonable opportunity to present their constitutional claims during the state juvenile proceedings

because state law permitted constitutional challenges to a juvenile court's orders to be brought in the juvenile court, and those challenges are subject to review by the state supreme court, and ultimately by the United States Supreme Court. The plaintiffs were both parties to the state court proceeding, and with the exception of the initial hearing on the ex parte petition to take custody of the child, they were present and participated in the state court proceedings. Therefore, the plaintiffs had a reasonable opportunity to bring their constitutional challenges. *Id.*

The facts of the instant case are more similar to <u>Liedel</u> and <u>Staley</u> than <u>Goodman</u>. In the instant case, the primary relief sought by Daw is return of her four children to her custody. Although she additionally seeks damages for actions that resulted from the dependency court's orders and the manner in which the child custody proceedings were initiated and conducted, the granting of any of the relief sought by Plaintiff would call into question the correctness of the state dependency court's orders. Indeed, if this court were now to hold that the Florida dependency court's orders regarding custody were unconstitutional, the court would "effectively nullify" the state court's order to take the children into custody initially, the state court's determination that it had jurisdiction to initiate and conduct custody proceedings even though the children were removed from a home in Alabama, and the state court's final decisions regarding custody of Daw's children. *See* <u>Drees v. Ferguson</u>, 396 F. App'x 656, 658 (11th Cir. 2010) (unpublished) (<u>Rooker-Feldman</u> criteria satisfied where plaintiff was losing party in a state custody proceeding; the state proceeding had ended; plaintiff "alleged injuries—including her loss of custody, contempt sentence, and financial hardship—caused by [the] state court rulings"; and plaintiff sought to have the federal court "review and reject" the state court proceedings and declare the state court rulings void as a matter of law) (citing <u>Staley</u>, 837 F.2d at 1017–18); <u>Redford v. Gwinnett Cnty. Judicial Circuit</u>, 350 F. App'x 341, 345 (11th Cir. 2009) (unpublished) (finding barred by <u>Rooker-Feldman</u> a complaint that "was an explicit attempt to use the federal courts to overturn the Georgia state courts' decisions regarding [the plaintiff's] divorce, child custody arrangement, and child support obligations . . ."); *see also* <u>Incorvaia v. Incorvaia</u>, 154 F. App'x 127, 128 (11th Cir. 2005) (unpublished) (challenge to Florida court's alimony order barred by <u>Rooker-Feldman</u> because a finding that the order was unconstitutional would "effectively nullify" the state court's judgment) (quoting <u>Powell v. Powell</u>, 80 F.3d 464, 467 (11th Cir. 1996) (holding that

Rooker-Feldman barred "as applied" challenge to state court decision to distribute a portion of husband's naval retirement pay to wife upon divorce)).

Finally, even if this court found that Plaintiff's Fourth Amendment claim for monetary damages—based on Finch's alleged illegal entry into her home in Flomaton, Alabama—was not barred by Rooker-Feldman because success on the claim would not call into doubt the state court's ultimate termination of Plaintiff's parental rights, the court finds that Plaintiff has failed to state a viable claim. The Fourth Amendment, as applied to the states by way of the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. 4. The Fourth Amendment's protection "unquestionably extends beyond criminal investigations to civil and administrative contexts." Lenz v. Winburn, 51 F.3d 1540, 1548 n.7 (11th Cir. 1995) (citing Soldal v. Cook County, Ill., 506 U.S. 56, 66 n.11, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992), O'Connor v. Ortega, 480 U.S. 709, 714, 107 S. Ct. 1492, 94 L. Ed. 2d 714 (1987), and Camara v. Municipal Court, 387 U.S. 523, 534, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967)). It is well-settled that warrantless entry into a home is presumptively unreasonable and in violation of the Fourth Amendment, absent consent or exigent circumstances. *See* Payton v. New York, 445 U.S. 573, 587, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980); McClish v. Nugent, 483 F.3d 1231, 1248 (11th Cir. 2007); *see also* Lenz, 51 F.3d at 1548, 1550–53 (finding no Fourth Amendment violation where child protection investigator entered a home without a warrant or court order and retrieved a child's belongings, when the child was being removed from her father's custody, after the child protection investigator concluded the child was being abused).

Here, the facts alleged by Plaintiff establish that Finch acted pursuant to an order of the court in removing Daw's children from her home. Thus, no violation of the Fourth Amendment occurred. *See, e.g.*, Brokaw v. Mercer Cnty., 235 F.3d 1000, 1010 (7th Cir. 2000) ("In the context of removing a child from his home and family, a seizure is reasonable if it is pursuant to a court order, if it is supported by probable cause, or if it is justified by exigent circumstances . . . .") (emphasis added); Wooley v. City of Baton Rouge, 211 F.3d 913, 925–26 (5th Cir. 2000) (noting that a warrant, probable cause, or a reasonable belief that a child is in imminent harm is necessary to justify a seizure of a child under the Fourth Amendment) (emphasis added); J.B. v. Washington County, 127 F.3d 919, 929 (10th Cir. 1997) (applying probable cause standard to removal of child); Wallis v. Spencer, 202

F.3d 1126, 1138 (9th Cir. 2000) ("state may not remove children from their parents' custody <u>without a court order</u> unless there is specific, articulable evidence that provides reasonable cause to believe that a child is in imminent danger of abuse") (emphasis added).  Because Defendant Finch acted pursuant to a court order, no viable Fourth Amendment claim exists.[10]

      (3)     Discrimination Based Upon Plaintiff's Status as "Handicapped"

To state a claim under Title II of the Americans with Disabilities Act ("ADA"), a plaintiff must allege:  (1) that she is a "qualified individual with a disability"; (2) that she was "excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity" or otherwise "discriminated [against] by such entity"; (3) "by reason of such disability." 42 U.S.C. § 12132.  *See also* <u>Kornblau v. Dade Cnty.</u>, 86 F.3d 193, 194 (11th Cir. 1996) ("[T]o show a violation of Title II the plaintiff must show disability, the denial of a public benefit, and that such denial of benefits, or discrimination was by reason of the plaintiff's disability.") (internal quotations and citation omitted).  The court will assume for the sake of discussion that Plaintiff qualifies as disabled for purposes of the ADA and thus has satisfied the first prong of the three-part test. Plaintiff's claim under the ADA fails, however, because she has not alleged sufficient facts to establish the remaining prongs.  DCF is undoubtedly a "public entity" within the meaning of § 12132. But Plaintiff's bare, conclusory, and speculative allegations fail to establish that she was actually discriminated against by DCF or anyone acting on its behalf, such as Cowan, Finch or Williams, much

---

[10] Section 39.401 of the Florida Statutes governs the state's removal of children who are believed to be in danger.  It explains that removal of a child from a parent is permissible with prior judicial authorization or even without prior judicial authorization in come circumstances.  To obtain judicial authorization prior to removal, as was done in the case at bar, a law enforcement officer or an authorized agent of the DCF must provide sworn testimony to establish probable cause to support a finding:  (1) that a child has been abused, neglected, or abandoned, or is suffering from or is in imminent danger of illness or injury as a result of abuse, neglect, or abandonment; (2) that the parent or legal custodian of the child has materially violated a condition of placement imposed by the court; or (3) that the child has no parent, legal custodian, or responsible adult relative immediately known and available to provide supervision and care.  Fla. Stat. §§ 39.401 (1)(a), (b).  Here, Daw states that Cowan provided a sworn statement to Judge Swanson, which evidently—in Judge Swanson's opinion—established probable cause to order the removal of Daw's children from her home.  Judge Swanson therefore issued an order of removal, and Finch acted pursuant to the order.  To the extent Plaintiff alleges Finch acted unlawfully by "crossing state lines," Plaintiff had an opportunity to raise this claim in the state court proceedings and in fact appears to have done so (*see, e.g.*, doc. 12 at 6, 11 (Amended Complaint), wherein Plaintiff states under penalty of perjury that she attended a "Dependency Shelter Order Hearing" on August 28, 2008, and also discussed the matter of the court's "jurisdiction over [Daw's] 4 children even in the State of Alabama").  Likewise, Daw had an opportunity to raise her claim that Cowan provided false testimony to Judge Swanson.

less that she was discriminated against by them because of her physical or mental disabilities. *See* Allah El v. Avesta Homes, LLC, No. 12-14560, 2013 WL 2321421, at *1 (11th Cir. May 29, 2013) ("Legal conclusions must be supported by factual allegations, and pleadings that merely contain conclusions do not demonstrate sufficient grounds for relief.") (unpublished) (citing Iqbal, 556 U.S. at 678–79). To be sure, Daw's claim of discrimination includes no facts supporting that claim, other than those that describe her health conditions, and the claim is based wholly on what appears to be Daw's speculation that because others took actions against her with which she is displeased, such actions must have occurred because she is disabled. "[A] mere statement of a legal conclusion such as this one is not sufficient to allow [her] claim to survive." *Id.* In short, because Plaintiff has failed to allege facts demonstrating a clear causal connection between Defendants' actions and her disability, her claim under the ADA must fail.

Likewise, to the extent Plaintiff has brought her claim of discrimination under the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 ("the Act"), which prohibits discrimination against the disabled, her claim also fails. "[T]he Act should be construed in conformity with the . . . Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq*., and related regulations." Greene v. Seminole Elec. Co-op., Inc., 701 So. 2d 646, 647 (Fla. 5th DCA 1997) (citing Brand v. Florida Power Corp., 633 So. 2d 504 (Fla. 1st DCA 1994)); *see also* Jolley v. Wallace, No. 95-147 CIV-ORL-22, 1995 WL 463709, at *1 (M.D. Fla. May 30, 1995) ("Federal decisions construing Title VII are to be followed when considering Florida's Civil Rights Act, because the Florida law was patterned after Title VII.") (citing Florida Dep't of Community Affairs v. Bryant, 586 So. 2d 1205, 1209 (Fla. 1st DCA 1991)).[11]

(4) Privacy Act

As previously noted, Daw claims Defendants Finch and Williams violated Florida's Privacy Act by contacting her family physician (Dr. Smith) and convincing him to stop prescribing medications to her. Daw, however, has not identified the Florida law allegedly violated by these Defendants. In light of Plaintiff's pro se status, however, the court will construe Plaintiff's claim as brought under

---

[11] *See also* M.C. v. Dep't of Children & Families, 750 So. 2d 705, 706 (Fla. 3d DCA 2000) (joining "several . . . sister states" and finding that dependency proceedings are held for the benefit of the child, not the parent, and thus the Americans with Disabilities Act is inapplicable when used as a defense by the parent/respondent in dependency proceedings) (citations omitted). Therefore, to the extent Plaintiff seeks reversal of the state court custody orders based her disability, state law appears to preclude the relief she seeks.

the privacy provisions of the Florida Constitution and related state statutes that concern the privacy of medical records.

Floridians enjoy an explicit right of privacy under article 1, section 23 of the Florida Constitution, which provides in pertinent part that "[e]very natural person has the right to be let alone and free from governmental intrusion into his private life." Florida courts have determined that individuals enjoy a right of privacy in their medical records under this provision of the state constitution. State v. Johnson, 814 So. 2d 390, 393 (Fla. 2002); *see also* Fla. Stat. § 456.057(7)(a) (eff. July 1, 2006) (health care practitioners may not furnish medical records or discuss the medical condition of a patient with any person other than the patient, the patient's legal representative, or other health care providers involved in the care and treatment of the patient absent consent, subpoena, court order, or other specific circumstances). Thus, for example, under these provisions Dr. Smith could not furnish Daw's medical records to Finch or Williams or discuss Plaintiff's condition or treatment with them absent the existence of an exception to the privilege. Fla. Stat. § 456.07(7)(a). "The privilege protects the patient's interest in keeping the details and nature of h[er] medical treatment confidential without fear of later disclosure by the one in whom [s]he has placed h[er] trust." Estate of Stephens ex rel. Clark v. Galen Health Care Inc., 911 So. 2d 277, 280 (Fla. 2d DCA 2005). As the Florida Supreme Court noted, the "major purpose" of the statute creating this privilege is to "restrict a physician from disclosing patient information." Acosta v. Richter, 671 So. 2d 149, 154 (Fla. 1996).[12]

Although the primary purpose of the statute is to impose restrictions on physicians and other health care practitioners regarding the release of medical information, in this case Daw claims it is Defendants Finch and Williams who have violated her privacy rights. Given the statute's primary purpose, it is not surprising that many of the cases interpreting these provisions address physicians' obligations and responsibilities with regard to safeguarding and disclosing medical records. The Florida courts have, however, also interpreted these provisions with respect to the actions of non-physicians (and state actors) and found that they, too, may violate an individual's right to privacy in some circumstances.

---

[12] Thus, to the extent Plaintiff's allegations suggest that Dr. Smith violated her privacy rights, no claim lies because he is not named as a Defendant.

In <u>Mullis v. State</u>, 79 So. 3d 747, 749 (Fla. 2d DCA 2011), a narcotics investigator with a local police department was investigating Mr. Mullis for possible "doctor shopping." In the course of his investigation he sent "blast fax[es]" to approximately eighty pharmacies, inquiring whether Mr. Mullis had filled prescriptions for controlled substances, such as oxycodone. *Id.* Based on the responses made by certain pharmacies, the investigator contacted six doctors and spoke with either the doctors or their employees. *Id.* The investigator did not obtain any records from the physicians, but he was informed by each of them that Mr. Mullis was a patient, that Mr. Mullis had been identified by his driver's license, that Mr. Mullis did not tell any of the physicians "he was seeing another doctor and obtaining controlled medications," and that Mr. Mullis would not have received a prescription for a controlled substance if they had this information. *Id.* at 750. In arguing that the information obtained by the investigator from the doctors should be suppressed in his criminal trial, Mr. Mullis claimed that the investigator violated his privacy rights by acquiring information from his doctors without first obtaining his authorization or a subpoena issued upon proper notice as required by Fla. Stat. § 456.057(7)(a)(3).[13] The court first noted, that "to determine whether [the investigator's] conduct violated [§] 456.057(7)(a) and Mr. Mullis's constitutional privacy rights, we must first determine whether the statements that he obtained from Mr. Mullis's doctors constituted "reports and records relating to [the] examination or treatment" of Mr. Mullis. *Id.* at 752 (citing § 456.057(6); <u>State v. Herc</u>, 67 So. 3d 266 (Fla. 2d DCA 2011) (directing the trial court to address on remand whether statements obtained from a defendant's doctors' offices were medical records as defined in § 456.057(6)); <u>State v. Shukitis</u>, 60 So.3d 406, 409 (Fla. 2d DCA 2010) (stating same)). The court then grouped the information provided by Mr. Mullis' doctors into four categories: (1) statements confirming that Mr. Mullis was a patient; (2) statements that the doctors had prescribed controlled substances to Mr. Mullis; (3) statements that Mr. Mullis did not disclose his receipt of a prescription for a controlled substance from another provider within the preceding thirty days; and (4) statements that the doctors would not have prescribed a controlled substance to Mr. Mullis if they had known he

---

[13] The court readily concluded that the investigator had the authority to obtain Mr. Mullis' pharmacy records. <u>Mullis</u>, 79 So. 3d at 750 (citing Fla. Stat. § 893.07(4) (law enforcement officers, whose duty it is to enforce Florida laws relating to controlled substances, may obtain an individual's pharmacy records related to controlled substances without a warrant, subpoena, or prior notice to the patient without violating that individual's constitutional privacy rights.)).

had received a prescription for a controlled substance within the preceding thirty days. *Id.* at 752–53. Next, the court concluded that the statements included in categories two, three, and four violated Mr. Mullis' privacy rights because the information "constitutes a report relating to Mr. Mullis's examination or treatment" or involves treatment decisions.[14] *Id.* at 753 (citing § 456.057(6)). Finally, after determining that the investigator acted in bad faith because he "made absolutely no attempt to comply with section 456.057(7)(a)(3) before obtaining the statements from Mr. Mullis's doctors," the court found that the statements from Mr. Mullis' doctors, with the exception of the statements confirming his status as a patient, should be suppressed. *Id.* at 754.

In the instant case, Plaintiff alleges no facts suggesting that Finch or Williams received any information, statements, patient contracts, confirmation of her status as a patient, or records from Dr. Smith. Rather, Daw merely alleges that Finch and Williams approached Dr. Smith and convinced him to stop writing prescriptions for her. These actions are a far cry from those taken by the investigator in Mullis, *supra*. Absent any allegation that Dr. Smith supplied information to Finch and Williams that "constitutes a report relating to [Plaintiff's] examination or treatment," this court finds no violation of Plaintiff's privacy rights under state law. *Cf.* Mullis, 79 So. 3d at 747; State v. Sun, 82 So. 3d 866, 868 (Fla. 4th DCA 2011) (in a prosecution for doctor shopping, trial court properly suppressed "the defendant's patient contracts and statements from his doctors, which a police officer obtained without a subpoena or warrant," because they were obtained in violation of defendant's privacy rights) (emphasis added); *see also* Shukitis, 60 So. 3d at 409 (noting that § 456.057(6) defines records that may not be disclosed under § 456.057(7)(a) as including "reports and records relating to . . . examination or treatment [of the patient], including x-rays and insurance information").

Additionally, if Dr. Smith did indeed discontinue Daw's prescriptions because Finch and Williams convinced him to do so—and only because Finch and Williams convinced him to do so, as Daw alleges—and Daw's health deteriorated as result, Daw may have a medical malpractice or negligence claim (or other claim) for damages against Dr. Smith, but she clearly has no claim for damages against Finch or Williams concerning Dr. Smith's treatment decisions or the result thereof. Likewise, even if Finch, Williams, or Dr. Smith acted in the manner alleged by Plaintiff, she would

---

[14] The court declined to decide whether the statements in category one (i.e., those from the doctors' offices confirming Mr. Mullis as a patient) violated Mr. Mullis' privacy rights, because the issue was not raised on appeal.

not be entitled to the return of her children to her custody, which is the only other relief she seeks in this action.

Finally, to the extent Plaintiff alleges a violation of federal privacy laws, she cannot state a claim on which relief may be granted.  The Privacy Act of 1974 ("Privacy Act"), 5 U.S.C. § 552a(b), "imposed upon federal agencies an array of record-keeping obligations to prevent unauthorized disclosures of confidential information."  *See* Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention, 623 F.3d 1371, 1381 (11th Cir. 2010).  As a corollary, however, the private right of action created by the Privacy Act only applies to federal agencies.  *See* Schwier v. Cox, 340 F.3d 1284, 1287 (11th Cir. 2003) (holding that non-disclosure obligations under the Privacy Act apply only to federal agencies).  Here, Plaintiff has alleged no facts suggesting that a federal agency or its employees committed any act or took any action against her that violated her right to privacy.  Correspondingly, Plaintiff has not articulated a plausible claim for relief under the Privacy Act.

Conclusion

While the court was aware of no viable claim upon review of any of Plaintiff's complaints in this case, the court repeatedly gave her opportunities to state a viable claim, and she has failed to do so in the most recent complaint, which is the operative pleading. The court has construed her allegations broadly and liberally and having done so is satisfied that Plaintiff has failed to state a claim upon which relief may be granted.

Accordingly, it is **ORDERED**:

The clerk of court is directed to **SEAL** the Amended Complaint and Second Amended Complaint in this case (docs. 12, 20).

And it is respectfully **RECOMMENDED** that:

1.      This action be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because it fails to state a claim upon which relief can be granted.

2.      The clerk be directed to close the file.

At Pensacola, Florida, this 27<u>th</u> day of September 2013.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).